T.C. Summary Opinion 2015-22

UNITED STATES TAX COURT

RUDY G. LOPEZ AND HELEN M. LOPEZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24871-12S.                    Filed March 25, 2015.

<u>Kelly A. Gibson</u>, for petitioners.

<u>Jeffrey L. Heinkel</u>, <u>Erin Kathleen Salel</u>, and <u>Sylvia L. Shaughnessy</u>, for

respondent.

SUMMARY OPINION

NEGA, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $10,887 in petitioners' Federal income tax and a section 6662(a) penalty of $2,177.40 for the 2009 tax year. The issues for decision are whether section 469 precludes petitioners' deductions for rental losses claimed and whether petitioners are liable for the penalty.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners resided in California when their petition was filed. Petitioners jointly filed their 2009 Federal tax return.

Petitioner Rudy G. Lopez is a retired mental health director. In 2009 he worked as a mental health consultant and his wife, petitioner Helen M. Lopez worked for the County of San Bernardino as a human services administrator.

Petitioners owned four rental properties in California in 2009: (1) a condominium unit on Winter Gardens Boulevard (Winter Gardens property); (2) a single-family residence on Wildwood Lane (Wildwood property); (3) a single-

---

[1](...continued)
Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

family residence on Yucca Drive (Yucca property); and (4) a single-family residence on 9th Street (9th St. property). Petitioners filed an election with their income tax return for 1996 to treat all interests in these properties as a single rental real estate activity pursuant to section 469(c)(7)(A).

The Winter Gardens property was 92 miles from petitioners' primary residence and was occupied by petitioners' daughter and her boyfriend. Petitioners abated the couple's monthly rent in exchange for their work on improvements made to the property. The Wildwood property was 172 miles from petitioners' primary residence but only 2 miles from their other residence in San Bernardino County. The Yucca and 9th St. properties were close to petitioners' primary residence. In mid-November petitioners evicted the Yucca property tenant for failure to pay rent.

Petitioners also coowned property in South Carolina with Mrs. Lopez' mother. Initially, petitioners produced a settlement statement to respondent that indicated they were the only mortgagors of the property. Another name appeared to be covered up on the document. At trial respondent produced documents showing that petitioners and Mrs. Lopez' mother were mortgagors of this property. Mrs. Lopez testified that her mother had quitclaimed her interest in the

property to petitioners in order to qualify for Medicaid and other social service benefits.

In 2009 petitioners received payments from Mrs. Lopez' mother for use of the property. These payments roughly reflected the monthly mortgage payments due on the property. Although petitioners claimed deductions for losses on this property on their 2009 tax return, none of the hours Mr. Lopez logged to qualify as a real estate professional applied to this property.

Petitioners' log of the hours Mr. Lopez allegedly spent on his real estate activity contained entries for basic landlord functions such as collecting rents, performing routine repairs and maintenance (sometimes with the help of independent contractors), and inspecting the properties. Mr. Lopez also logged hours for making significant repairs and managing an eviction at the Yucca property, performing foundation work at the Wildwood property, painting the properties, shopping for supplies, bookkeeping, banking, tax return preparation, and traveling to and from the properties. Petitioners recorded that Mr. Lopez spent over 900 hours in 2009 on his rental activity. At trial Mrs. Lopez testified that she assisted with managing the eviction at the Yucca property, shopping for supplies, and bookkeeping.

Petitioners originally provided respondent with a summary spreadsheet log listing each date of the 2009 calendar year with brief notes of activities performed on their respective dates and total hours spent in 30-minute increments. For example, on February 6, petitioners logged 10.5 hours for "paint kitchen, Costco paint sprayer, travel" for the Winter Gardens property. On November 26-- Thanksgiving Day, and shortly after the Yucca property tenant was evicted, petitioners logged 10 hours to "cleanup/show" this property. At trial petitioners' friend testified that it took around three weeks after the Yucca property tenant was evicted to make the property marketable again.

Petitioners testified that they meant for their submitted log to be a summary of a more detailed calendar log they initially kept to themselves and did not provide to respondent until after the examination process. Originally, petitioners told respondent that Mr. Lopez maintained a handwritten day planner that he kept in his car to record his rental activities. At trial they testified that they created the more detailed calendar log by compiling the notes Mr. Lopez made on his phone contemporaneously with his rental activities with the receipts he kept pertaining to his rental activities. Then, once a month, petitioners would input this information into an electronic calendar that Mrs. Lopez maintained. This reconciliation

process was included in the hours logged for what Mr. Lopez described as "bookkeeping".

There were some discrepancies with the receipts petitioners initially provided to respondent to substantiate their rental activity hours. For example, petitioners submitted a receipt for painting work performed on their son's home to substantiate hours worked on their rental properties on November 17, 2009. Initially the address on the receipt was covered up, but at trial respondent produced the original receipt indicating petitioners' son's address. Similarly, petitioners provided a receipt for work done on their personal residence to substantiate hours worked on their rental properties on February 7, 2009.

There were also discrepancies between the receipts petitioners provided and the information contained in their logs. For example, Mr. Lopez would give rent collection receipts to the tenants who used cash to pay their rent. Some of the dates on these receipts did not match the dates indicated for collecting rent on petitioners' summary log. In addition, petitioners' calendar log indicated (and they testified) that they went to particular stores for supplies in one city while their receipts showed that they were at the same stores in different cities more than 100 miles away.

Respondent's notice of deficiency disallowed deductions for petitioners' rental losses and determined that petitioners were liable for a section 6662(a) accuracy-related penalty.

Discussion

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212. Section 469, however, generally limits deductions from any passive activity loss. A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). For the purposes of section 469 and to the extent provided in regulations, a trade or business includes any activity with respect to which expenses are allowable as a deduction under section 212. Sec. 469(c)(6)(B). Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4). Material participation is defined as involvement in the operations of the activity that is regular, continuous, and substantial. Sec. 469(h)(1).

An exception to the rule that a rental activity is per se passive is found in section 469(c)(7), which provides that the rental activities of certain taxpayers in

real property trades or businesses (sometimes referred to as real estate professionals) are not per se passive activities under section 469(c)(2) but are treated as a trade or business subject to the material participation requirements of section 469(c)(1). See sec. 1.469-9(e)(1), Income Tax Regs. A taxpayer may qualify as a real estate professional if: (1) more than one-half of the personal services performed in trades or businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(i) and (ii). In the case of a joint tax return, either spouse must satisfy both requirements. Sec. 469(c)(7)(B). Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not per se passive under section 469(c)(2).

Both petitioners appeared and testified at trial. They insisted that what was recorded in their logs represented what Mr. Lopez did during the 2009 tax year. We need not accept petitioners' testimony and may and do reject it because of the many indicia of unreliability. See Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), aff'g T.C. Memo. 1967-85; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioners' testimony is undermined by their questionable claims

about their allegedly contemporaneous calendar, the vagueness and inherent improbability of Mr. Lopez' estimates, and their production of documents that appear to lack forthrightness.

Because we are not persuaded that Mr. Lopez spent more that 750 hours on his rental activity, petitioners have not established that he is a real estate professional. Consequently, we need not analyze whether Mr. Lopez spent more than 50% of his time in real estate trades or businesses or whether petitioners materially participated in the management of their rental properties. Petitioners' rental activity, therefore, is per se passive, and they may not offset the losses against their other income for 2009.

Section 6662(a) Penalty

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax which is attributable to a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c), the Commissioner bears the burden of production with regards to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. Higbee v. Commissioner, 116

T.C. 438, 446-447 (2001). Respondent has computed the deficiency, and the understatement of income tax is greater than $5,000, which is greater than 10% of the tax required to be shown on petitioners' return for 2009. Thus, respondent's burden of going forward has been satisfied.

Once the Commissioner has met the burden of production, the taxpayers must come forward with persuasive evidence that the penalty is inappropriate because, for example, they acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

To the extent that the penalty is attributable to a substantial understatement of income tax under section 6662(b)(2), it may be reduced if (1) the taxpayer's position is supported by "substantial authority" or (2) relevant facts are adequately disclosed in a statement attached to the return and the taxpayer's position has a reasonable basis. Sec. 6662(d)(2)(B). Petitioners do not argue that the amount of their penalty should be reduced because they had substantial authority for their claimed losses or because their position was adequately disclosed. Accordingly, we do not reduce petitioners' penalty pursuant to section 6662(d)(2)(B).

We conclude that petitioners' exaggerated logs and testimony negate their good faith in claiming rental losses against their earned income. Petitioners offered no persuasive argument or evidence to show that they had reasonable cause for the underpayment and that they acted in good faith with respect to the underpayment for 2009. Consequently, petitioners are liable for the section 6662(a) penalty for a substantial understatement of income tax for 2009.

We have considered the other arguments of the parties, and they are not material to our conclusions.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.